**ROSNER & MANSFIELD, LLP**
ALAN M. MANSFIELD, ESQ. (C.S.B. 125998)
10085 Carroll Canyon Rd., Suite 100
San Diego, CA 92131
Telephone: (858) 348-1005
Facsimile: (858) 348-1150

**DOYLE LOWTHER, LLP**
WILLIAM J. DOYLE II, ESQ. (C.S.B. 188069)
JOHN A. LOWTHER IV, ESQ. (C.S.B. 207000)
9466 Black Mountain, Rd., Suite 210
San Diego, CA 92126
Telephone: (619) 822-1110
Facsimile: (619) 822-1112

**HIDEN, ROTT & OERTLE, LLP**
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL IAN ROTT, ESQ. (C.S.B. 169468)
DAVID V. HIDEN, JR., ESQ. (C.S.B. 169915)
ERIC M. OVERHOLT, ESQ. (C.S.B. 248762)
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
Telephone: (619) 296-5884
Facsimile: (619) 296-5171

*Attorneys for Peter Keller, on behalf of himself and all others similarly situated.*

FILED

2008 NOV 19 AM 11: 31

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

'08 CV 2134 ℠ BLM

| | |
|---|---|
| PETER KELLER, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE, INC., a California Corporation; and DOES 1 through 100, inclusive.<br><br>    Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, INJUNTIVE RELIEF AND RESTITUTION**<br><br>1.  **Negligence**<br>2.  **Breach of the Express Warranty and Implied Warranty of Merchantability**<br>3.  **Fraud and Deceit**<br>4.  **Negligent Misrepresentation**<br>5.  **Unlawful Business Practice in Violation of Bus. & Prof. Code §17200, *et seq.***<br>6.  **False and Misleading Advertising in Violation of California Bus. & Prof. Code §17500, *et seq.*** |

///

///

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 FAX (619) 296-5171

1    Plaintiff, on behalf of himself and all others similarly situated, based on the investigation

2    of counsel, the existing public record and on knowledge, information and belief, formed after an

3    inquiry reasonable under the circumstances, except where so indicated, alleges as follows, which

4    except where alleged on personal knowledge, will likely have evidentiary support after a

5    reasonable opportunity for further investigation or discovery.

6    ## NATURE OF THE ACTION

7    1.    Defendant Apple Computer, Inc. (hereinafter "Apple") has misrepresented to the public the

8    speed, strength and performance of the 3G-bandwidth network while using either of the two

9    Apple's 3G iPhones.  These two (2) products are as follows: the 3G-8GB iPhone and the 3G-

10   16GB iPhone (hereinafter "3G iPhones").

11   2.    The term '3G' refers to the third generation in mobile communications.  Specifically, 3G

12   technology features faster bandwidth and transfer rates.  3G networks are supposed to have a

13   potential transfer rate of 3 Mbps.  Apple's 3G iPhones combined with AT&T's 3G Service Plan

14   fail to deliver 3G to Plaintiff and all other 3G iPhone users as advertised.

15   3.    Apple has named the iPhone 3G in order to advertise that their product is a 3G phone.

16   Built- in to the very name of the phone, Apple has engaged in a campaign to lead consumers to

17   believe that there phone is always connected for 3G speeds.  This is not the case, since plaintiff

18   and others similarly situated only experience 3G connectivity only a fraction of the time that they

19   are connected to the AT&T Network.

20   4.    Defendants Apple and AT&T Mobility Inc. ("AT&T") have an agreement, whereby AT&T

21   is the exclusive service provider for the iPhones and iPhone 3G.  Consumers are unable to choose

22   any other network or carrier when using their iPhone 3G.  Through this joint agreement, Apple

23   and AT&T have engaged in a collaborated scheme to deceive plaintiff and other consumers, since

24   the iPhone 3G and AT&T 3G Network is faulty and rarely provides 3G connectivity to its

25   customers.  Most of the time plaintiff receives no 3G connectivity at all.

26   5.    Apple knew, or should have known, or was obligated under the law to understand that the

27   iPhone 3G could not deliver the promised speed.  Yet both Apple and AT&T profited by selling

28   upgraded plans at a $10/month premium and requiring plaintiff and others to enter into a new two

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 FAX (619) 296-5171

(2) year contract. Additionally, they enjoyed the benefit of being the exclusive service provider for Apple 3G iPhones in the United States.

6.      Apple & AT&T knew, should have known, or were obligated under the law to understand, that AT&T's 3G Network might not be able to handle the massive influx of their 3G iPhones. Public reports indicate the companies anticipated sale of 10 million iPhone 3G phones. Yet, Apple profited by being the first to market, by gaining market share and by receiving hundreds of millions of dollars in revenue selling millions of new 3G iPhones.

7.      The 3G iPhones suffer from either a hardware flaw, demanding too much power from the 3G bandwidths, or a software flaw in the programmed algorithms. Plaintiff and other 3G users are unable to connect to the 3G network. Consequently, users are not getting 3G transfer rates. Therefore, Apple and AT&T have oversold the network by selling more phones and more subscription plans than the 3G infrastructure can handle.

8.      Based on how the iPhone is set up and designed, the strain on the network would make it impossible to provide reliable and sustained 3G connectivity to customers.

9.      Due to the overloaded 3G network, it is quite common for iPhone 3G users to be on the 3G network for only a few minutes before their 3G iPhone switches over to the slower EDGE network, even in areas with rich 3G coverage. Yet, not only did defendants fail to warn customers, they actively advertised that the new iPhone was 3G on the nation's fastest 3G network.

10.     According to published reports, AT&T spokesperson, Brad Mays stated that iPhone 3G is "performing great". "Customers in 300 major metro areas in the United States and 350 by the end of the year are experiencing the fast network connectivity that our 3-G network provides", according to Mays in an interview. Mays also stated that "We have anticipated the influx of users and have reported that the strength of the network can, does and will continue to support that". Brian X. Chen, "iPhone 3G Users Heated Over Network Issues"., July 23, 2008, http://blog.wired.com/gadgets/2008/07/iphone-3g-users.html, (Accessed on August 29, 2008)

11.     However, the 3G iPhones' sensitivity to third-generation network signals is well below the level specified in the 3G standard. This poor connectivity most likely resulted from either a

1  hardware problem introduced during mass production or a software problem with the internal

2  programmed algorithms.

3  12.    Neither of Apple's 3G iPhones contain a disclaimer on the outside of the 3G iPhone boxes.

4  13.    Consumers, such as the Plaintiff, may look for disclosures and/or disclaimers on the

5  outside of its boxes or advertising material prior to making any electronics device purchase. Such

6  information provides consumers with necessary information to make an informed purchasing

7  decision. This is especially true in the case of the speed and performance of an expensive device;

8  an important feature in any electronics device purchase. Disclosures about the true nature of the

9  iPhone 3G and AT&T's 3G network should have been provided to customers prior to purchasing

10  the iPhone 3G. However, based on its extensive advertising campaign focusing on this 3G

11  characteristic, potential and actual customers were likely to be mislead into believing that the 3G

12  iPones would operate primarily, if not exclusively, on a 3G network.

13  14.    AT&T charged consumers $10/month in an additional fee to be able to sign up for the

14  additional 3G network coverage. Additionally, plaintiff was required to enter to a 2 year contract

15  with AT&T in order to sign up for AT&T's 3G network. AT&T did not warn plaintiff of the

16  connectivity problems with the 3G Network using the iPhone, despite the express statements and

17  advertisements to the contrary.

18  15.    As a proximate result of the misrepresentations of Defendants, Plaintiff is locked into a two

19  (2) year Service Plan with AT&T, for 3G connectivity that is spotty at best and for which he pays

20  a premium. Plaintiff is also out the premium that he paid to have an iPhone 3G (he bought the

21  iPhone 3G to replace his existing non- 3G phone) and the eighteen dollar ($18.00) additional

22  service fee that AT&T charges at contract signing time.

23  16.    Apple provides information to and requires customers to call or otherwise contact AT&T to

24  setup service for the iPhone 3G, in order for the iPhone 3G to function as a phone or for internet

25  usage.

26  17.    AT&T sells 3G iPhones on its website. AT&T also exclusively provides 3G network

27  service for the 3G iPhones.

28  18.    President and CEO of AT&T's wireless unit Ralph de la Vega directly aligned the

4

company with the sale of the iPhone in a statement on the companies website: "We will continue to expand our 3G network coverage into new areas, grow our lineup of industry-leading devices, such as iPhone 3G, and deliver compelling new 3G services to market like Video Share SM.". *AT&T Offers Nation's Fastest 3G Network*, "Nation's Fastest 3G Network Complements Best Global Coverage and Industry-Leading Portfolio of 3G Devices", July 10, 2008, http://www.att.com/gen/press-room?pid=4800&cdvn=news&newsarticleid=25921 (Accessed September 4, 2008) (Emphasis added).

19.     Apple intended to sell 10 million 3G iPhones within the first year.   Such information was made public and available to AT&T.

20.     Apple and AT&T acted in concert to sell the iPhone 3G and services and knew or should have known that they would sell more iPhone 3Gs and Service Plans than the AT&T network could handle.

21.     This complaint seeks, among other things: (1) equitable and injunctive relief, including corrective labeling and advertising, and the imposition of a constructive trust on all monies unlawfully obtained by Defendants; and (2) the recovery of compensatory, statutory and/or punitive damage as well as obtaining restitution and disgorgement from Defendants of their ill-gotten gains.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over this action.   The damages suffered and sought to be recovered by Plaintiff and the Class that he seeks to represent is, in the aggregate, in excess of the jurisdictional minimum of this Court for a class action.   The exact amount of damages caused to the Class members cannot be precisely determined without access to Defendants' records.

23.     Venue is proper in this Court since the Plaintiff is a resident of this County.   Further, Plaintiff entered into an agreement for the purchase of his Apple 3G iPhone and network service rate plan agreement ("Service Plan") in this District.   Defendants received substantial compensation from sale and Service Plan of these two (2) iPhone 3G models by doing business here and Defendants made numerous misrepresentations, which had effects in this District.   Thus, as to the named Plaintiff, thousands of class members and a portion of the overall Class, certain

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1 liability of the Defendants arose in this District, certain contracts were entered into here, were to

2 be performed here and were breached here.

3 24.    This Court also has jurisdiction over each Defendant named herein because each Defendant

4 is either a corporation or an association organized under the laws of the State of California, a

5 foreign corporation or association authorized to do business in California and registered with the

6 California Secretary of State, or does sufficient business, has sufficient minimum contacts with

7 California, or otherwise intentionally avails itself of the California market, through the promotion,

8 marketing, advertising of employment positions for delivery drivers and/or sell their products in

9 California, to render the exercise of jurisdiction by the California courts permissible under

10 traditional notions of fair play and substantial justice.

11                                            **THE PARTIES**

12 25.    On personal knowledge, Plaintiff, Peter Keller, is, and at all material times were, a

13 resident of San Diego, California.   Plaintiff sues on behalf of himself and all others similarly

14 situated.  Plaintiff purchased an Apple 3G iPhone 16GB model, which was advertised, distributed,

15 and/or sold, by Defendant Apple, and monthly service provided by AT&T, as named and defined

16 herein, in San Diego, California.  Moreover, for all the reasons stated herein, plaintiff has suffered

17 injury in fact and has lost money and/or property as a result of Defendants' improper acts, i.e.,

18 their practice of engaging in false and misleading advertising concerning the speed and

19 performance in two (2) of its 3G iPhones, as defined above.

20 26.    In bringing this action, as to the individual and Class claims, Plaintiff either directly or

21 indirectly acted in response to, *inter alia*, the representations, advertising and other promotional

22 materials which were prepared and approved by Apple and their agents and disseminated on the

23 face of the containers and/or through local and national advertising media, including Defendants'

24 Internet websites, containing the misrepresentations and/or omissions alleged hereinafter.

25 27.    Plaintiff also acted in response to the representations of these Defendants concerning the

26 way they represented the speed and performance of its phone and network to  Plaintiff and the

27 proposed Class.   Defendants also failed to disclose to Plaintiff and the proposed that the

28

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 FAX (619) 296-5171

1 infrastructure of the 3G network and the 3G iPhone was insufficient to provide the represented
2 performance and speed.

3 28. Defendant Apple Computer, Inc. ("Apple") is a California corporation which is licensed to
4 do, and is doing, business in California and throughout the United States. Its principal offices are
5 located in Cupertino, California. Apple transacts business in San Diego County, California and at
6 all relevant times designed, manufactured, promoted, marketed, distributed, and/or sold the
7 products that are the subject of this complaint, throughout the United States and California.

8 29. The true names and capacities, whether individual, corporate, associate, or otherwise, of
9 Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff,
10 who therefore sue Defendants by such fictitious names. Plaintiff will seek leave of Court to
11 amend this Complaint to reflect the true names and capacities of the Defendants designated
12 hereinafter as DOES when such identities become known.

13 30. Each of the defendants acted in concert with each other in the design of the iPhones and/or
14 the advertisements in question and as a result are legally responsible in some manner for the
15 unlawful acts referred to herein. Apple's and AT&T's authorized retailers/resellers were Apple's
16 and AT&T's agents, ostensible agents, employees, servants, joint ventures, actors in concert,
17 aiders and abettors and co-conspirators.

18 31. At all relevant times, Defendants have made, and continue to make misrepresentations in
19 the marketing, advertising and/or sale of its 3G iPhone and service plans described above.

20 **CLASS ACTION ALLEGATIONS**

21 32. Plaintiff brings this action of behalf of himself and all others similarly situated within the
22 State of California or all other states as the Court may deem appropriate. The proposed class is
23 both ascertainable, and shares a well-defined community of interest in the questions of law and
24 fact as further detailed below.

25 33. Plaintiff seeks to represent a Class composed of and defined as follows: "All persons in
26 California, or such other states of the Court determines to be appropriate, who purchased an
27 iPhone 3G and AT&T 3G Service Plan." Plaintiff reserves the right to amend or modify the Class

28

CLASS ACTION COMPLAINT

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 FAX (619) 296-5171

1    description with greater specificity or further division into subclasses or limitation to particular

2    issues.

3    **A.**        **Numerosity**

4    34.    The potential members of the Class as defined are so numerous that joinder of all the

5    members of the Class is impracticable.  While the precise number of Class Members has not been

6    determined at this time and the facts on which to calculate that number are presently within the

7    sole control of defendant, Plaintiff believes that the number of people who have bought the

8    iPhone 3G and signed up for the 3G service is over a million people.  Joinder of all members of

9    the Class is not practicable.

10   35.    The Class members are readily ascertainable.  Defendants' sales subscription records

11   would provide information as to the number and location of all Class members.  The means

12   available for identifying Class members would be based on a proposed class announcement, and

13   initial discovery from Defendant Apple's and AT&T's records to confirm the sales of 3G iPhones

14   and 3G Service Plans.  Since Defendants Apple and AT&T are likely to have accurate and

15   detailed sales and service information regarding individuals who would be identified as Class

16   members, there is an easy and accurate method available for identifying such members.

17   **B.**        **Commonality**

18   36.    There are questions of law and fact common to the Class that predominates over any

19   questions affecting only individual Class members.  These common questions of law and fact

20   include, without limitation:

21        1.        Whether Defendant Apple and AT&T advertised and sold the 3G iPhones and 3G

22                  Service Plans, claiming increased speed and performance over the iPhone 3G, even

23                  if that the connection would last for only a few minutes before reverting to the

24                  slower EDGE speed, which is not on the 3G Network; and

25        2.        Whether Apple and AT&T failed to disclose the 3G speed and performance

26                  discrepancy to consumers and whether such failure violates California's statutory

27                  and common-law prohibitions against such conduct

28

8

---

CLASS ACTION COMPLAINT

1    Thus, liability can be proven uniformly throughout the class by facts common to all
2 members of the proposed class.

3 **C.**          **Typicality**

4 37.    The claims of the named Plaintiff is typical of the claims of the Class.  Plaintiff and all
5 members of the Class sustained damages arising out of and caused by Defendants' common
6 course of conduct in violation of laws as alleged herein.  He purchased the 3G iPhone as it was
7 advertised with having the characteristics of better speed and performance than it actually has.
8 Yet plaintiff is not getting 3G connectivity with his 3G iPhone the majority of the time that he is
9 connected to the AT&T 3G Network.  He did not receive any disclosures prior to, or after
10 purchase, by Defendant Apple or AT&T that contradicted defendants' contrary representations
11 explaining the actual limitations in the iPhone 3G and its interaction with AT&T 3G Network's
12 actual speed and performance.  These facts are typical among the proposed class.  Further, these
13 facts are essential in proving the claims alleged in this complaint against Defendants.

14 **D.**          **Adequacy of Representation**

15 38.    Plaintiff will fairly and adequately represent and protect the interests of the members of the
16 Class.  The Class Representative can adequately represent the class because his claim is both
17 typical of the class, and the issues are based on facts that are common between the class
18 representatives and the proposed class.  Moreover, the representative has suffered all of the
19 potential injuries and damages that might arise out of the conduct complained of herein.  As such,
20 the representative can adequately represent the class because he will bring all potential legal
21 actions and remedies that would be available to individual members of the class.  Plaintiff has
22 retained attorneys that are competent and experienced in litigating large class actions, to represent
23 their interests and that of the Class.  Plaintiff and his counsel have done significant work in
24 identifying and investigating the potential claims in this action, and the necessary resources to
25 adequately and vigorously litigate this Action, have significant experience in handling class
26 actions and the types of claims asserted herein and have been appointed as class counsel by courts
27 in other actions, and Plaintiff and counsel are aware of the fiduciary responsibilities to the Class
28 Members to fairly and adequately represent the class and are determined to diligently discharge

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

9

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1  those duties by vigorously seeking the maximum possible recovery for the Class based on the

2  merits of these claims and the resource available.

3  **E.**          **Superiority of Class Action**

4  39.    To the extent it is an element for class certification, a class action is a superior method for

5  resolving the claims herein alleged as compared to other group methods for adjudicating these

6  issues.  The remedy to resolve the common class issues regarding the iPhones and Network

7  Connectivity deficit capacity would be to refund the cost of the iPhones and Service Agreement,

8  which is estimated at approximately $500.00 per plaintiff.  Individually, this is not a significant

9  amount, and would be likely be limited to a small claims action by individual plaintiffs.  Such

10  actions are inconceivable, as the costs associated with proving a prima-facie case would likely

11  exceed the obtainable recovery.

12  40.    Important public interests will be served by addressing the matter as a class action. The

13  adjudication of individual litigation claims would result in a great expenditure of court and public

14  resources.  However, treating the claims as a class action will result in a significant savings of

15  these costs.  Class Action treatment will allow those similarly situated persons to litigate their

16  claims in the manner that is most efficient and economical for the parties and the judicial system.

17  41.    Also, there is a substantial likelihood of inconsistent verdicts, which would frustrate the

18  resolution of these legal issues for Defendants, forcing them to comply with inconsistent legal

19  standards.  Moreover, there is no assurance individual claims will prevent the continued deceptive

20  practices alleged herein.  This would frustrate the purpose of California consumer protection laws.

21  Considering the actual size of the class, estimated to be in the millions, and the importance of the

22  issues presented to the State of California (enforcing consumer protections through deceptive

23  practices within the state), a class action is the desired method for resolving this matter.

24  Moreover, with such common questions of fact, the Court is in a superior position to fashion a

25  remedy that would uniformly apply to each, or nearly all, Class members.

26  42.    Finally, failure to certify a class would literally make it impossible for a great many of the

27  class members to seek relief, as the costs of litigation would far exceed the remedy available.  For

28  those who do seek judicial relief, there is a strong likelihood that separate courts would lead to

10

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 FAX (619) 296-5171

1    inconsistent verdicts; working a substantial prejudice on Defendants, especially, as in this case,

2    where equitable relief is being sought. As such, a class action presents for fewer management

3    difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive

4    supervision by a single court.

5    43.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management

6    of this action that would preclude its maintenance as a Class Action.

7    **FIRST CAUSE OF ACTION**

8    **(Negligence)**

9    44.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set

10    forth herein.

11    45.     Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

12    46.     At all times mentioned, Defendants had a duty to properly manufacture, design, formulate,

13    compound, test, produce, assemble, inspect, research, distribute, market, label, package, prepare

14    for use and sell the iPhone 3G to function as a 3G phone as advertised.

15    47.     The Apple iPhone was negligently manufactured and designed, which causes it to fail to

16    provide reliable and sustained 3G connectivity.

17    48.     At all times mentioned, Defendants negligently and carelessly failed to properly

18    manufacture, design, formulate, compound, test, produce, assemble, inspect, research, distribute,

19    market, label, package, prepare for use, sell the iPhone 3G to function as a 3G phone as

20    advertised.

21    49.     As a result of said negligence and carelessness of Defendants, Plaintiff suffered damages as

22    alleged herein.

23    **SECOND CAUSE OF ACTION**

24    **(Breach of the Express Warranty and Implied Warranty of Merchantability)**

25    50.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set

26    forth herein.

27    51.     Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

28    52.     Plaintiff purchased the iPhone 3G and AT&T 3G Service Plan and used it for its ordinary

11

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 FAX (619) 296-5171

1 and intended purpose of providing reliable and sustained 3G service.

2 53. The iPhone 3G cannot perform its ordinary and intended purpose. The iPhone 3G will not

3 function as a phone or as an internet deviCe without the buyer first purchasing an AT&T 3G

4 Service Plan.

5 54. Plaintiff and the Class purchased their 3G iPhones and AT&T 3G Service Plans with the

6 reasonable expectation that they would receive reliable and sustained 3G connectivity to their

7 phones. In addition, the advertisements disseminated by defendants stressing the excellence and

8 reliability of their 3G iPhone constitute a warranty that the products will operate as intended

9 during their useful life. However, the 3G iPhones are not fit for their warranted, advertised,

10 ordinary and intended purpose of providing reliable 3G service and is in fact defective. This

11 defect has manifested as Plaintiff and Class members do not receive 3G connectivity at all most of

12 the time.

13 55. When Defendants placed the iPhone 3G into the stream of commerce, they knew or

14 reasonably should have known that the intended and ordinary purpose of their phone was to

15 provide 3G connectivity and that users would expect 3G connectivity.

16 56. No repairs appear to be presently available to fix the iPhone 3G nor for the AT&T 3G

17 Network so as to provide reliable 3G connectivity. Apple has tried several firmware fixes, which

18 has not provided plaintiff or the Class with reliable or sustained 3G connectivity.

19 57. Defendants' breach of the warranty described above constitutes a violation of Cal. Civ.

20 Code §1792 et seq. and entitles Plaintiff and the Class to damages.

21 58. WHEREFORE, Plaintiff and the Class they seek to represent request relief as described

22 below.

### THIRD CAUSE OF ACTION

**(Fraud and Deceit – Cal. Civ. Code §§1709-1710)**

25 59. Plaintiff incorporates by reference each and every preceding paragraph as though fully set

26 forth herein.

27 60. Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

28 61. With regard to each false representation alleged in this cause of action, at all relevant times,

1    Plaintiff and the class was unaware that the representation was false.

2    62.    Defendants, and each of them, from the time that the iPhone 3G and Service Plans on the

3    3G Network were first designed, manufactured, marketed and/or distributed and up to the present,

4    deceived and falsely promised Plaintiff and the Class by (1) making false and fraudulent

5    misrepresentations to Plaintiff, the Class and the public, including but not limited to that the said

6    products and service plans would provide customers with 3G connectivity; and (2) concealing

7    from Plaintiff, the class and the public despite having superior knowledge thereof that the iPhone

8    3G would not function at 3G speeds do to the manufacture and design of the iPhone and the

9    limitations of the AT&T 3G Network.

10    63.    Defendants, and each of them, maintained a nationwide multi-million dollar sales and

11    marketing campaign of the iPhone 3G and deceived Plaintiff as to the connectivity of the iPhone

12    3G. Apple also inserted the descriptive word '3G' in the name of the phone, representing that

13    users can expect data to travel at 3G rates on the iPhone

14    64.    Defendants suggested, asserted and/or promised that the iPhone 3G with AT&T's 3G

15    service plan would have reliable and sustained 3G functionality. Defendants suggested, asserted

16    and/or promised a phone that was "Twice as Fast" and on "The nations fastest 3G network".

17    However this claim was false.

18    65.    Defendants either misrepresented or suppressed the fact that their iPhone 3G and AT&T's

19    3G Network could not provide reliable and sustained 3G connectively. They also suppressed the

20    fact that they 3G network could not handle the massive influx of users as a result of the marketing

21    and sale of the iPhone 3G.

22    66.    When Defendants made the foregoing misrepresentations, they knew or recklessly

23    disgregarded them to be false and/or had no reasonable basis for believing them to be true.

24    67.    The misrepresentations and concealment by Defendants were made and conducted with the

25    intent to willfully induce Plaintiff and the Class to purchase the iPhone 3G and the required 3G

26    Service Plan.

27    68.    In response to the false, fraudulent and/or willful misrepresentation and concealment by the

28    Defendants, and each of them, Plaintiff was induced to and did purchase an iPhone 3G and AT&T

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1 3G Service Plan. Plaintiff and other class members reasonably based their decision to purchase

2 these phones and plans on the representations of Apple and AT&T. H

3 69.     Defendants' acts were done willfully, maliciously, with fraudulent intent and with

4 deliberate disregard of the rights of Plaintiff and the Class.

5 70.     WHEREFORE, Plaintiffs and the Class they seek to represent request relief as described

6 below.

7 **FOURTH CAUSE OF ACTION**

8 **(Negligent Misrepresentation)**

9 71.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set

10 forth herein.

11 72.     Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

12 73.     At all times herein, Plaintiff and the class was unaware of the falsity of the statements

13 made by Defendants.

14 74.     Apple and AT&T negligently misrepresented that the 3G iPhones and the AT&T 3G

15 service plans would provide customers with 3G connectivity. Apple advertised their iPhone 3G

16 as "Twice as Fast" as the previous iPhone. Apple also inserted the descriptive word '3G' in the

17 name of the phone, representing that users can expect data to travel at 3G rates on the iPhone.

18 Both Apple and AT&T represented 3G connectivity with the 3G iPhone and AT&T 3G Network.

19 75.     At all relevant times, Defendants had no reasonable grounds for believing that their

20 representations were true because the phone had existing issues with 3G connectivity and the

21 AT&T Network could not guarantee 3G connectivity to customers who purchased 3G Network

22 service.

23 76.     In making these representations to Plaintiff, Defendants Apple and AT&T intended to

24 induce Plaintiff and the Class to purchase the 3G iPhone and AT&T 3G Service Plan.

25 77.     Plaintiff and the class reasonably acted in response to the statements made by Defendants

26 when they purchased an iPhone 3G and AT&T 3G Service Plan.

27 78.     As a proximate result of the negligent misrepresentations of Defendants, Plaintiff and class

28 members are locked into a two (2) year Service Plan with AT&T, for 3G connectivity that is

14

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1  spotty at best and for which he pays a premium.  Plaintiff and class members are also out the

2  premium that they paid to have an iPhone 3G (he bought the phone to replace his existing non-3G

3  phone) and the eighteen dollar ($18.00) additional service fee that AT&T charges at contract

4  signing time.

5  79.    WHEREFORE, Plaintiffs and the Class he seeks to represent request relief as described

6  below.

## FIFTH CAUSE OF ACTION

### (Unlawful, Unfair and Deceptive Business Practices in Violation of

### California Business & Professions Code §17200, *et seq.*)

10  80.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set

11  forth herein.

12  81.    Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

13  82.    The Unfair Competition Law defines unfair competition to include any "unfair,"

14  "unlawful," or "fraudulent" business act or practice. California Business and Professions Code

15  §17200 et seq.  The Act also provides for injunctive relief and restitution for violations.

16  83.    Defendant Apple violated, and continues to violate, California Business and Professions

17  Code §17200 et seq., by misrepresenting the actual speed and performance of two (2) of its 3G

18  iPhone models.

19  84.    Defendant AT&T violated, and continues to violate California Business and Professions

20  Code §17200 et seq., by misrepresenting the strength of the network and its ability to support the

21  millions of 3G users. They have misrepresented Plaintiff's ability to connect to the 3G Network.

22  85.    By engaging in the above described acts and practices, Defendant Apple & AT&T have

23  committed one or more acts of unfair competition within the meaning of California Business and

24  Professions Code §17200 et seq.

25  86.    Defendant Apple's and AT&T's acts and practices as described herein have deceived

26  and/or are likely to deceive members of the public.  Apple advertises the iPhone 3G as "Twice as

27  Fast. Half the Price", when the phone connects to the internet over their slower EDGE network

28  the majority of the time.  Calling the phone the iPhone 3G, leads the reasonable consumer,

15

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1  including Mr..Keller, to believe that the advertised "Twice as fast" is in relation to the 3G (third

2  generation mobile connection), which is twice as fast as the 2G predecessor.

3  87.   The acts and practices of Apple and AT&T are also unlawful because they violate one or

4  more of the following: Negligence, Breach of Express and Implied Warranty of Merchantability,

5  Fraud and Deceit, Negligent Misrepresentation, the Consumers Legal Remedies Act, Civil

6  Conspiracy and California Business & Professions Code §17500, as described below.

7  88.   As discussed above, Plaintiff and the members of the Class purchased one of these 3G

8  iPhone models directly from Apple and service plan from AT&T and/or its authorized

9  retailers/resellers.

10  89.   In this regard, the funds paid by Plaintiff and the members of the Class to Apple's and

11  AT&T's retailers/resellers were, in fact, paid directly to Apple and AT&T.  Apple and AT&T

12  profited enormously through falsely representing the speed and performance of two of its models

13  through its authorized retailers/resellers.  Apple and AT&T's revenues attributable thereto are

14  thus directly traceable to millions of dollars paid out by Plaintiff and the members of the Class for

15  the 3G iPhones at issue, and plaintiff and the members of the class were injured in fact and lost

16  money or property as a result thereof.

17  90.   Unless Defendant Apple and AT&T are enjoined from continuing to engage in the

18  unlawful, unfair, fraudulent, untrue, and deceptive business acts and practices as described herein,

19  Plaintiff and the Class members residing within California will continue to be damaged by

20  Apple's and AT&T's unfair competition.

21  91.   Apple and AT&T, through their acts of unfair competition, have acquired money from

22  members of the proposed Class.  Thus, Plaintiff and the members of the Class request this Court

23  disgorge and restore this money to them and enjoin Apple and AT&T from continuing to violate

24  California Business and Professions Code §17200 et seq., as discussed above.

25  92.   Such conduct is ongoing and continues to this date. Plaintiff and the Class members are

26  therefore entitled to relief described below.

27  ///

28  ///

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 FAX (619) 296-5171

## SIXTH CAUSE OF ACTION

### (False and Misleading Advertising in Violation of

### California Business & Professions Code §17500, et seq.)

93.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

94.     Plaintiff asserts this cause of action on behalf of himself and on behalf of the Class.

95.     Defendant Apple's and AT&T's acts and practices as described herein have deceived and/or are likely to deceive members of the public. Apple's and AT&T's advertise, including its website on the Internet, to call attention to, or give publicity to Apple and AT&T's iPhone 3G and 3G network service. Apple advertises the iPhone 3G as "Twice as Fast. Half the Price". In reality, the 3G iPhones connect to the internet over their slower EDGE network the majority of the time. Marketing the phone by naming it "iPhone 3G", leads the reasonable consumer, including plaintiff, to believe that they will receive 3G connections to their phone.

96.     AT&T advertises and sells 3G Network plans, yet customers are frequently kicked off of the 3G Network. The majority of time Plaintiff is not on the 3G Network and cannot get any 3G connectivity most of the time, despite being such connectivity being advertised and sold to Plaintiff.

97.     Thus, by its actions, Apple and AT&T are disseminating advertising concerning its products and services, which by its very nature is unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code §17500, et. seq. Such advertisements are likely to deceive, and continue to deceive, the consuming public.

98.     Further, the above-described false, misleading, and deceptive advertising conducted by Apple and AT&T continues to have a tendency to deceive the general public in that Apple and AT&AT have failed to disclose the true and actual speed and performance of the 3G iPhone and the insufficient infrastructural 3G network, as described above. Apple and AT&T have also failed to instigate a public information campaign to alert consumers of these deficiencies in its advertising which continues to create a misleading and confusing perception of the 3G iPhones' speed, performance and network connectivity.

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

99.    In making and disseminating the statements alleged herein, Apple and AT&T should have known that the statements were untrue and misleading, and action in violation of California Business & Professions Code §17500, et. seq. Apple and AT&T's revenues attributable thereto are thus directly traceable to millions of dollars paid out by Plaintiff and the members of the Class for the 3G iPhones at issue, and plaintiff and the members of the class were injured in fact and lost money or property as a result thereof.

100.    The misrepresentations and non-disclosures by Apple and AT&T of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §17500, et. seq.

101.    As a direct and proximate result of Apple's and AT&T's wrongful conduct, Plaintiff and the members of the Class request that this Court cause Apple and AT&T to restore this money to them, and to enjoin Apple and AT&T from continuing to violate California Business & Professions Code §17500, et. seq., as discussed above.  Otherwise, Plaintiff and the members of the Class will continue to be damaged by Apple's false and/or misleading advertising.

102.    Such conduct is ongoing and continues to this date.  Plaintiff and the Class are therefore entitled to the relief described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the Class defined herein, as applicable, pray for judgment and relief on all Causes of Action as follows:

1.    An order certifying this case as a class action and appointing Plaintiff and counsel to represent the Class;

2.    For a temporary, preliminary and/or permanent order for injunctive relief enjoining Defendants from pursuing the policies, acts and practices complained of herein;

3.    For a temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to undertake an immediate public campaign to inform members of the general public as to their prior practices and notifying members of the proposed Class as to the presence of potential restitutionary relief;

CLASS ACTION COMPLAINT

4.    For an award of damages as appropriate;

5.    For an order requiring disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiffs and all members of the Class all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition;

6.    Reasonable attorneys' fees;

7.    Costs of this suit;

8.    Pre- and post-judgment interest; and

9.    Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff and the Class demand a trial by jury on all claims so triable.

DATED: 11/19/08

HIDEN, ROTT & OERTLE, LLP

By: _____

Michael Ian Rott, Esq.
David V. Hiden, Jr., Esq.
Eric M. Overholt, Esq.

**ROSNER & MANSFIELD, LLP**
Alan M. Mansfield, Esq

**DOYLE LOWTHER, LLP**
William J. Doyle II, Esq.
John A. Lowther IV, Esq.

Attorneys for Plaintiff, on behalf of himself and all others similarly situated.

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

CLASS ACTION COMPLAINT

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
PETER KELLER, on behalf of himself and all others similarly situated

**DEFENDANTS**
APPLE, INC., a California Corporation; and DOES 1 through 100, inclusive.

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Santa Clara
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

'08 CV 2134 JSBLM

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Hiden, Rott & Oertle, LLP, 2635 Camino del Rio South, #306
San Diego, CA 92108, (619) 296-5884

Attorneys (If Known)
Morrison & Forester, LLP, 425 Market St., San Francisco, CA 94105; (415) 268-7000

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C 1332(a)
Brief description of cause:
Class Action for Negligence, Breach of Implied Warranty, Fraud & , and CA Bus. & Prof Codes

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ > $5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE  Larry Alan Burns
DOCKET NUMBER 08CV1835 LAB(RBB)

DATE
11/18/08
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 157243   AMOUNT $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

CV    TKE    11/19/08

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 157243 — TC**

**November 19, 2008**
**11:35:14**

**Civ Fil Non-Pris**
USAO #.: 08CV2134
Judge..: JANIS L. SAMMARTINO
Amount.:                    $350.00 CK
Check#.: 7765

**Total—> $350.00**

FROM: KELLER VS
       APPLE